Francisco León
**LAW OFFICE OF FRANCISCO LEÓN**
9121 E. Tanque Verde, #104-430
Tucson, Arizona 85749
Az. Bar: 006578
520-305-9170
520-465-3000
FAX 520-395-9495
azcrimlaw@gmail.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**MANUEL REDONDO-GORTARI,**<br><br>Defendant | ) | CR-11-2729-5-JGZ-JR<br><br>**DEFENDANT'S FIRST OBJECTIONS TO THE PRESENTENCE REPORT; MEMORANDUM** |

It is expected that excludable delay under 18 U.S.C. §3161 et seq., may occur as a result of this motion or from an order based thereon.

Defendant Manuel Redondo-Gortari, by and through his counsel, submits the following Objections to the Presentence Report for the Court's consideration at sentencing which is scheduled for September 18, 2013 at 9:20 a.m. These objections are supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Redondo-Gortari and co-defendant Sandra Mendivil Redondo are husband and wife. They were charged, tried and convicted together following jury trial. Both absconded during jury trial before this Court. Although charged with the same offense and in the same indictment, the jury returned a different verdict against Manuel Redondo-Gortari. On Count 5, conspiracy to possess with intent to distribute more than one thousand kilos of marijuana, the jury returned a verdict finding Redondo-Gortari guilty conspiring to possess with intent to distribute 100 kilos but less than 1,000 kilos. On Count 7, conspiracy to produce identification documents without lawful authority, the jury returned a verdict of guilty. There was no special interrogatory submited to the jury on this count. Finally, on Count 8, conspiracy to commit money laundering, the jury returned a verdict of guilty but, again, there was no special interrogatory submitted to the jury with regard to this count.

### 1. Objection to factual assertions in the Offense Conduct.

Paragraph 21. The Presentence Report asserts that Redondo-Gortari "picked up $50,000.00 in a duffle bag that had been delivered from Nebraska by Terry Haddock (one of Shannon Williams' drivers)."

There is no independent evidence to support this assertion. The evidence at trial showed that federal agents were closely watching the cash drop and even took photographs of the two men who picked up the cash from a vehicle driven and left there by Terry Haddock. Neither of the two men is Redondo-Gortari.

The genesis of this assertion is a custodial statement allegedly made by Redondo-Gortari which was deliberately not recorded (even though the interrogation room was wired for audio and video recording) after Redondo-Gortari was arrested and interrogated. Two of the agents who were present at the cash drop examined the photos of the two men and neither agent was able to testify that either one of the two men was Redondo-Gortari. The two agents who testified about this statement also testified inconsistently concerning the failure to record the statement. One testified a decision was made before the interrogation not to record the interrogation and the other agent testified so such discussion occurred. The agents could not explain this inconsistency in their testimony.

Redondo-Gortari also objects to the assertion by "case agents" that Redondo-Gortari was an average participant. This determination should be made by the court in considering all the evidence. As this Court heard the evidence, this Court should make the determination of Redondo-Gortari's role in the offense.

2. **Objection to Failure to Adjust for Acceptance of Responsibility**.

Paragraph 34. The Presentence Report fails to apply an adjustment under U.S.S.G. §3E1.1 because Redondo-Gortari proceed to trial, failed to appear for jury trial and absconded from pretrial release resulting in an enhancement for obstruction of justice.

Redondo-Gortari objects to the failure to adjust for acceptance of responsibility. Redondo-Gortari was prepared to plead guilty to the plea agreement offered by the prosecution which provided for a sentence of sixty months. The prosecution, however, required all defendants to enter pleas

of guilty and provided further that no defendant could plead guilty if even one defendant proceeded to trial. The decision to proceed to trial, therefore, was not Redondo-Gortari's but that of his co-defendants. Redondo-Gortari should not be penalized for decision made by his co-defendants.

Redondo-Gortari has not been charged or convicted of any "obstruction of justice" charge. Nor has Redondo-Gortari been charged with failure to appear. There are several statutes which provide for prosecution and punishment for these offense by Redondo-Gortari. Denial of acceptance of responsibility should not denied on this account.

Moreover, the Presentence Report fails utterly to mention that the evidence at trial was that Redondo-Gortari provided an extensive oral statement and, later, a signed statement, which greatly inculpated him on all counts after he was arrested. Those statements were presented by the prosecution at trial and credited by the prosecution to the jury as being knowing, intelligent and voluntary. Indeed, the prosecution relied on those statements in asking for and obtaining convictions against Redondo-Gortari.

Redondo-Gortari should be granted acceptance of responsibility.

**3. Objections to Offense Level Computation for Conspiracy to Possess Marijuana and Money Laundering.**

Although the jury found Redondo-Gortari of conspiracy to possess 100 to 1,000 kilos, the Presentence Report Guideline calculation ignores the jury's finding and attributes 10,000 kilograms to Redondo-

Gortari in applying the Sentencing Guidelines for conspiracy to possess marijuana and money laundering.

Redondo-Gortari objects to this calculation. At most, the jury's verdict informs that Redondo-Gortari conspired to possess more than 100 but less than 1,000 kilos. Under the Sentencing Guidelines, the Base Offense Level for 100 kilos of marijuana is 26. As the Sentencing Guidelines for money laundering instruct that the offense level for that offense is the offense level for the underlying offense, the Base Offense Level for the money laundering count is also 26. Under U.S.S.G. §2S1.1(b)(2)(B), two levels are added for the money laundering conviction. Even adding the Adjustment for Obstruction of Justice (which Redondo-Gortari does not concede), the Adjusted Offense Level for this Group should be 30 not 40 as calculated in the Presentence Report.

**4. Objections to Offense Level Computation for Conspiracy to Produce Identification Documents.**

Although the Base Offense Level for this Offense under the Sentencing Guidelines is 7, the Presentence Report adds 20 levels based upon an attribution of more than 24,000 kilos of marijuana. Again, this calculation ignores the jury's verdict finding Redondo-Gortari guilty only of conspiring to possess with intent to distribute 100 to 1,000 kilos of marijuana. The "total loss" figure utilized in the Presentence Report is speculative and arbitrary.

Moreover, the proposed enhancement results in an increase of nearly 300% to the Base Offense Level. No evidence was presented at the trial to justify this enhancement. Certainly no finding was made the jury

supporting this level of enhancement. At most, the jury's verdict supports only the base offense of 7.

The government bears the burden of showing, by a preponderance of the evidence that a sentencing enhancement is warranted. However, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," the standard of proof becomes "clear and convincing evidence." **United States v. Hopper**, 177 F.3d 824, 833 (9th Cir. 1999). In the Ninth Circuit, seven and nine level increases are sufficient to trigger the clear and convincing evidence standard. *See* **United States v. Meza de Jesus**, 217 F.3d 638, 642 (9th Cir. 2000); **United States v. Munoz**, 233 F.3d 1117, 1127 (9th Cir. 2000). Here, the Presentence Report proposes an increase of 20 levels – almost a 300% increase from the Base Offense Level.

In **United States v. Meza de Jesus**, *supra*, the defendant was convicted of being an undocumented alien in possession of a firearm. At sentencing, however, the government argued that Meza de Jesus had committed that offense in connection with a kidnaping.

Using a preponderance of evidence standard, the district court concluded that the firearm possession had occurred in connection with a kidnaping and applied a nine-level increase to the offense level. The Court of Appeals for the Ninth Circuit vacated the sentence stating that the government had not meet the "clear and convincing" standard of proof.

In **Meza de Jesus**, *supra*, the probation officer recommended application of the enhancement based upon hearsay statements by the alleged victims in the police reports of the investigating officers. The probation officer did not interview the alleged victims and neither alleged

victim testified at trial. The witnesses had made conflicting statements to the investigating agents at different times and were unavailable at the time of the sentencing. The defense objected that the hearsay statements were "inherently unreliable" and insufficient to prove a kidnaping even under a preponderance of evidence standard. The Court of Appeals noted that under the Federal Rules of Evidence, police reports are inherently unreliable and that for this reason "[p]olice reports have generally been excluded [at criminal trial] except to the extent to which they incorporate firsthand observations of the officer." Fed.R.Evid. 803(8)(B) Advisory Committee Note. The Court also relied upon the district court's doubts about the force of the hearsay evidence, and the misapplication of the preponderance of evidence standard by the district court.

In this case, the jury has found a conspiracy to possess between 100 and 1,000 kilograms of marijuana. The Presentence Report, however, based on unattributed "information" provided by the prosecution without identification of any particular source attributes 10,000 kilograms to Redondo-Gortari. This is not "clear and convincing" evidence.

In addition, U.S.S.G. 2B1.1, speaks of "loss" in terms of property unlawfully taken, copied or destroyed and/or damaged property or average loss to each victim. U.S.S.G. §2B1.1, App. Note 3 (C). Application Note 3 describes "loss" as "actual loss" "intended loss" or "pecuniary harm."

The Presentence Report calculates loss by multiplying the alleged number of pounds involved in the alleged conspiracy by $500.00 and concludes there was a $12,000,000.00 "loss." Who "lost" this quantity of property? Does this suggest the United States public were the victims of this "loss?" The Presentence Report fails utterly to explain how this

calculation is a "loss" within the meaning of U.S.S.G. §2B1.1 which applies to offenses involving altered or counterfeit instructions. The loss calculation in the Presentence Report bears no relation to the term "loss" as defined in the Sentencing Guideline.

The Presentence Report concludes that a two-level enhancement under U.S.S.G. §2B1.1(b)(10)(C) should be added because of the offense involved "sophisticated means." Paragraph 46.

Redondo-Gortari objects to this enhancement. The evidence is that Redondo-Gortari asked MVD employee Denise Valencia if she would be willing to create an Arizona driver's license for Shannon Williams in the name of another person. Valencia agreed to do this and, a short time later, Shannon Williams provided Valencia with identification documents which Shannon Williams picked up.

Redondo-Gortari objects to the assessment in the Presentence Report that this procedure involved "sophisticated means," Paragraph 46 of the PSR, and that it involved "possession of device making equipment." In this case, none of the named defendants ever possessed or used any type of device to create or fabricate an identification document. There was no evidence at trial of how Denise Valencia created or fabricated the identification card or the driver's license.

The comments to the Guideline clearly reflect that the guidelines are intended to apply to persons who possess or use false credit cards or other devices to obtain property or money by fraud. The relationship between Redondo-Gortari and the fabrication of the identification and driver's license is too attenuated to apply this enhancement.

In addition, the comments to the Sentencing Guidelines show that "sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining the execution or concealment of the offense." U.S.S.G. §2B1.1(b)(10), App. Note 8(B).

> For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

In this case, there is no evidence that the identifications documents ever were used in the execution or concealment of the offense. While the documents may have been obtained, there is no evidence they were ever used.

Redondo-Gortari objects to the application of these enhancements in Paragraphs 46 and 47 of the Presentence Report.

**5. Objections to the Penalties allegedly applicable.**

The Presentence Report states that the possible penalties for the three verdicts returned by the jury are as follows:

1. Conspiracy to possess with intent to distribute between 99.8 and 998 kilograms of marijuana, a violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 21 U.S.C. § 846, a Class B Felony: 5 years to 40 years imprisonment/$2,000,000.00 fine.
2. Conspiracy to Produce Identification Documents, a violation of 18 U.S.C. § 1028(a)(1) and (2), (b)(1)(A)(ii), (b)(3)(A), and 18 U.S.C. § 1028(f), a Class C Felony: 0 years to 20 years imprisonment/$250,000.00 fine.

**A. Conspiracy to possess between 100 and 1,000 kilos.**

Count 5 of the indictment charges Redondo-Gortari with conspiracy to possess with intent to distribute more than 1,000 kilos. No request was made by either the prosecution or the defense for any lesser included offenses. Undersigned counsel is researching whether the conviction for an offense neither charged in the indictment nor sought by either the prosecution or defense and not instructed upon by the Court can stand.

Nonetheless, the jury returned a verdict against Redondo-Gortari finding him guilty of conspiracy to possess with intent to distribute between 220 and 2,200 lbs. marijuana, an offense on which Redondo-Gortari was not charged.

The indictment charges Redondo-Gortari and other alleged conspirators with conspiring "to possess with intent to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana," a violation of 21 U.S.C. §841(b)(1)(A)(vii). Count 5 of the indictment. That is the charge the grand jury returned and, by implication, the jury's verdict finding a lesser amount necessarily amounts to a finding that the element of quantity of marijuana in Count 5 did not to exist as to Redondo-Gortari. By implication, Redondo-Gortari was acquitted the charge in the indictment. Although Redondo-Gortari made a motion for judgment of acquittal at the end of the prosecution's case, he renews the motion now and submits the jury's verdict entitles him to a judgment of acquittal on Count 5 of the indictment.

The Presentence Report uses the quantity found the jury in the interrogatory to conclude that Redondo-Gortari has been convicted of an

offense under 21 U.S.C. §841(b)(1)(B)(vii) and is subject to a penalty of between five (5) and forty (40) years.

The Supreme Court's decision in **Alleyne v. United States**, --- U.S. ---, No. 11-9335 (Jun. 17, 2013), however, precludes application of any minimum sentence. In **Allyne**, the Supreme Court held that the in **Apprendi v. New Jersey,** 530 U.S. 466 (2000), that

> "Any fact, that by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *** Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury."

**Alleyne**, *supra*, slip op. at 1-2.

Here, Count 5 of the indictment does not allege any specific amount of marijuana. Instead, it alleges an amount of 1,000 kilos or more. Even though the jury answered an interrogatory that, as to Redondo-Gortari, it found the quantity to be 220 to 2,200 lbs, that amount is not charged in the indictment. Under **Alleyne**, the "fact" of quantity is an element of the offense. Here, no quantity of 220 to 2,200 lbs was charged in the indictment.

Thus, in addition to necessarily acquitting Redondo-Gortari of the offense charged in the indictment, the absence of any allegation in the indictment of any fact which allows a penalty of five (5) to (40) years precludes application of that penalty to Redondo-Gortari.

**B. Conspiracy to produce identification documents without lawful authority.**

Redondo-Gortari objects to the sentencing range proposed in the Presentence Report for his conviction on Count 7, for the same reason.

Count 7 of the indictment charges Redondo-Gortari with conspiring with other "to produce identification documents without lawful authority where such production would be in and would affect interstate commerce." More specifically, Count 7 charges that "the defendants produced, and aided and abetted the production and procurement of an Arizona Identification, Arizona Driver's Licenses, Veteran's License Plates, and Vehicle Title and Registration documentation from the Arizona Motor Vehicle Division by fraudulent means . . ." in violation of 18 U.S.C. §1028(a)(1) and (2), (b)(1)(A)(ii) and (b)(3)(A).

Title 18 U.S.C. §1028(b) sets forth applicable penalties for violations of 18 U.S.C. §1028(a). Generally, the penalty is up to fifteen (15) years if the offense involves the circumstances set forth in 1028(b)(1). The only applicable items in this case are a driver's license and a personal identification card. License plates and vehicle title registrations are not identification documents.

Title 18 U.S.C. §1028(b)(3) increases the possible maximum penalty to twenty (20) years but only if the offense is committed "to facilitate a drug trafficking crime." Thus, a "fact" necessary to increase the penalty from fifteen (15) years to twenty (20) is that the offense be committed to facilitate a drug trafficking crime.

Here, no such allegation is included in Count 7 of the indictment and no jury instruction or finding by the jury was made that the offense charged in Count 7 was "to facilitate a drug trafficking crime." The correct applicable maximum penalty then is fifteen (15) not twenty (20) years.

**RESPECTFULLY SUBMITTED** this 4th day of September, 2013.

**FRANCISCO LEÓN**
***/s/ Francisco León.***
Francisco León, Esq.

Copy of the foregoing served electronically
or by other means this 4th day of September, 2013, to:

AUSA David Flannigan
AUSA Robert A. Fellrath

Charles Weninger
Attorney for Sandra Yvette Mendivil-Redondo